631 So.2d 1257 (1994)
Dana DeGEORGE
v.
ALLSTATE INSURANCE COMPANY.
No. 93-CA-612.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 1994.
Rehearing Denied March 17, 1994.
*1258 Blue Williams, L.L.P., Peter M. Meisner, Metairie, for defendant-appellant Allstate Ins. Co.
John P. Napolitano, Jr., Richard M. Simsess, Abbott & Meeks, New Orleans, Houston, TX, for plaintiff-appellee Dana DeGeorge.
Before DUFRESNE, WICKER and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Allstate Insurance Company (Allstate), appeals from a judgment awarding plaintiff, Dana DeGeorge, insurance proceeds for damage to an outboard motor under a boatowners policy, plus penalties and attorney fees for its arbitrary and capricious failure to pay. We affirm that the action had not prescribed and the damage was covered under the policy and defendant's failure to pay the claim was not reasonable under the facts. We amend the attorneys fees and award post-trial attorney fees and costs.
Plaintiff owned a 1973 twenty-one foot boat with an inboard/outboard motor which was insured under a boatowners policy of insurance issued by defendant in 1982. On April 28, 1987, plaintiff filed with defendant a claim for damages to his motor in the amount of $3,355.92. He reported to the claims adjuster that a plastic material got caught on the motor shaft where the propeller exited the outdrive. As a result, the motor overheated and cracked the cylinder heads. The adjuster said that he would investigate.
After no response, plaintiff contacted defendant in May, 1987. No action was taken. In August, 1987 the impeller portion of the engine was examined by defendant. Defendant then contacted plaintiff and informed him that it was denying coverage because it did not believe that the damage was caused in the manner plaintiff reported. Plaintiff discussed the problem with the repairer, Gene Jackson, owner of Wheel and Rudder Marine, and, after a short time contacted an attorney. On November 6, 1987, the attorney sent defendant a letter with an affidavit by Jackson, describing the damage and the repairs that needed to be done. Jackson opined that the damage resulted from a restriction of water flow and that the water pump impeller would not necessarily melt before a restriction of the water intake would cause the engine to overheat, as apparently defendant believed. Jackson further stated *1259 that the damage was consistent with plaintiff's description of the event resulting in the damage and was the most likely cause.
In response, on November 13, 1987, defendant sent its first written response to this claim by Roger Welch, the claims adjuster. In that letter, he stated that, in order to continue the investigation, defendant required a signed, sworn proof of loss with support and verification and a signed nonwaiver agreement. These documents were executed by plaintiff on November 19, 1987 and received by defendant on November 24, 1987.
Defendant failed to respond so, on January 18, 1988, plaintiff's attorney sent a letter in which he reiterated conversations with Welch that plaintiff was available to arrange with defendant's expert, George Bent, to set up a date for Bent to inspect the engine and render his opinion, but that Bent had not contacted plaintiff. The letter also stated that unless defendant took action, suit would be filed.
Bent examined the engine in February, 1988, approximately three weeks after defendant made its request. However, the motor had been repaired at this point and he was only able to check the repaired motor and discuss the repairs and problem with Jackson.
No action was taken by defendant and plaintiff's counsel again wrote to defendant in March, 1988. This letter stated that Bent had inspected the engine and plaintiff made the impeller available a second time to defendant for its inspection according to its' request and defendant still had not responded to the claim. Plaintiff counsel again stated that plaintiff would take legal action if no response was forthcoming. Defendant did not respond and plaintiff filed suit on April 14, 1988.
On December 7, 1988, defendant filed Peremptory Exceptions Of No Right Of Action and Prescription. On May 9, 1989, the trial judge granted the exception of prescription. On May 16, 1989, plaintiff filed a Motion To Vacate Judgment on Defendant's Peremptory Exceptions of No Right of Action and Prescription. The motion was taken up on April 25, 1989 and granted. The trial court reversed itself on the issue of prescription by judgment dated February 14, 1990. Defendant appealed and later withdrew its appeal.
Defendant filed a supplemental answer in April, 1991. On August 27, 1991, it filed a Motion To Reconsider Peremptory Exception of Prescription and on February 4, 1992, the trial judge again denied it. The case finally went to trial on the merits on February 13, 1992 and, on May 13, 1992 the trial judge rendered judgment in favor of plaintiff for $3,355.92, minus the $250 deductible, plus attorney fees in the amount of $8500 and penalties in the amount of 10% of the total repair bill, or $335.59. The trial judge awarded interest from date of judicial demand and costs in the amount of $2145.10. Defendant filed a Motion For New Trial which was denied by Order dated April 22, 1993. Defendant appealed.
First, defendant asserts that the claim is prescribed. Second, it asserts that the trial judge erred in failing to find that defendant was reasonable and had probable cause to deny the claim. Third, defendant contends that, alternatively, if it was arbitrary and capricious in denying the claim, the trial judge erred in failing to allow it to crossexamine plaintiff and his counsel on the attorney fees. Fourth, defendant asserts that the amount of attorney fees awarded was excessive, based on the size and complexity of the case. Fifth, it contends that the amount of the penalties was incorrectly calculated.
Plaintiff answered the appeal asking for post-trial costs and attorney fees.

PRESCRIPTION
Defendant asserts that the claim was prescribed when suit was filed on April 14, 1988, because this policy is an extended coverage policy and is part of a standard fire policy. As such, the appropriate prescriptive period is one year from date of the loss under the policy terms, citing La.R.S. 22:691 F. R.S. 22:691 F sets forth the provisions a fire policy must contain, including a prescriptive period of one year from date of loss after compliance with the policy requirements.
*1260 Plaintiff responds that this is a separate policy of insurance and that it is not part of or connected in any way to a standard fire policy or a homeowners policy which is connected to a standard fire policy. Further, he argues that since this policy stands alone, it is governed by La.R.S. 22:629 A(3) which prohibits an insurer from limiting a right of action to less than one year from the time that the cause of action accrues and 22:629 B which voids any provision not in compliance. Plaintiff also argues that this policy limits the cause of action to less than one year from the date of the accrual of the cause of action by virtue of its language limiting the action to one year from date of the loss together with the 60 day provision. That provision states that suit may not be brought unless there is compliance with the policy terms, one of which is that the insured must provide a signed proof of loss within 60 days at the request of defendant. This type of provision, in a standard fire policy, has been held to create a period less than one year from time of loss. See: Grice v. Aetna Cas. & Surety Co., 359 So.2d 1288 (La.1978).[1] But, plaintiff argues that this is not an extended coverage policy under either a standard fire policy or a homeowners policy connected to a standard fire policy and that the prescriptive period for fire policies does not apply.[2]
R.S. 22:629 A[3] in effect at the time provides:
§ 629. Limiting actions; jurisdiction
A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition, stipulation, or agreement:
(1) Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country; or
(2) Depriving the courts of this state of the jurisdiction of action against the insurer; or
(3) Limiting right of action against the insurer to a period of less than one year from the time when the cause of action accrues in connection with all insurances unless otherwise specifically provided in this Code.
B. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.
The applicable portion of La.R.S. 22:691 F states:
SuitNo suit of action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after the inception of the loss.
The policy was introduced into evidence. It contains a face sheet with the name Allstate running in a decorative manner across the page. In the upper right hand corner in large bold print are the words ALLSTATE BOATOWNERS POLICY. Neither in the policy nor anywhere else is there language to infer that this policy is connected to any other type of policy, fire, homeowner or otherwise. Futhermore, the Allstate claims adjuster who testified at trial, Les LeBlanc, testified that this is a separate policy. Consequently, we find that it is clear that R.S. 22:691 F does not apply in this case, and that R.S. 22:629 A(3) does apply.
*1261 La.R.S. 22:629 A(3) prohibits applicable insurance policies from limiting the insured's right to bring an action to a time period less than one year from accrual of the cause of action. Accrual of a cause of action is when a suit may legally be instituted on the cause of action, that is, when it becomes immediately enforceable. Louette v. Security Industrial Insurance, 361 So.2d 1348, 1350 (La.App. 3rd Cir.1978), writ denied, 364 So.2d 564 (La.1978).
The policy herein provides for a prescriptive period of one year from date of loss to bring the action. It also prohibits suit by the insured unless there has been full compliance with the policy terms, which includes a requirement that the insured provide a sworn proof of loss within 60 days at the request of defendant. Until the insurer requests a sworn proof of loss, it may be inferred that the cause of action cannot accrue. In this case, that occurred in November, 1987.
In addition, plaintiff first knew that the claim was being denied in August, 1987. Thus, plaintiff had no reason to file suit until defendant made that decision. Until then, plaintiff had no immediately enforceable cause of action.
When, as here, the date of loss and date of accrual of the cause of action are not the same and the effect is to limit the right of the insured to bring suit within one year from date of accrual of the cause of action, then the policy provision limiting the right to one year from date of loss violates R.S. 22:629 A(3). Under R.S. 22:629 B then, that provision is considered void. The prescriptive period then becomes the ten year prescription under La.C.C. art. 3499, since R.S. 22:629 does not provide a maximum time limit in the event the provision is void. Louette at 1350.
In this case, the suit was filed on April 14, 1988, well within the ten year prescriptive period of La.C.C. art. 3499. Furthermore, suit was filed within one year from the date of accrual of the cause of action, whether the commencement date is the August, 1987 denial of the claim, or the 61st day after plaintiff submitted the proof of loss (See: Louette at 1350) according to the policy requirement. Thus, we find that the trial judge did not err in denying the peremptory exception of prescription.
Defendant next argues that the award of attorneys fees was not warranted because it had acted reasonably, based on the facts at its disposal. It asserts that, through no fault of its own, it had to wait for the marine specialist to inspect the boat between April and August, 1987. Defendant claims that, at the time of the denial in August, 1987, the adjuster had information that the boat had been run aground. Jackson, plaintiff's repairer and expert, had not been retained, so defendant only had its own expert's opinion on the cause of the damage and that opinion indicated that the damage was from a noncovered incident.[4]
Plaintiff disagrees. He contends that the evidence shows that defendant did not retain Bent until after the correspondence with plaintiff's attorney in December, 1987. Further, plaintiff asserts that defendant presented no justifiable reason for the delay in acting on the claim between April, 1987 and August, 1987, or for failing to take any action by either denying or paying the claim from November, 1987 through the date that plaintiff filed suit in April, 1988.
At the time the damage occurred in this case, La.R.S. 22:658 A provided:[5] *1262 § 658. Payments of claims, policies other than life and health and accident; penalties
A. All insurers issuing any type of contract, other than those specified in R.S. 22:656 and R.S. 22:657, shall pay the amount of any claim due any insured, including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950, within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest.
The record does not support the allegations of defendant. The evidence shows that Jackson was hired to repair the boat shortly after the incident. Defendant was notified of the problem that Jackson found on May 6, 1987. The testimony of defendant's claims adjuster shows that the engine was examined in June, 1987 and the impeller was examined in August, 1987, but no evidence was introduced to prove that the two month delay was caused by the inspector. In fact, there is no evidence to show who inspected the engine or impeller in June and August. Bent testified only that he inspected the motor in February, 1988, after it was repaired. Furthermore, the defendant was unable to show who actually made the notation that the boat had gone aground or from where the information came. The statement was found on an unsigned piece of paper in the defendant's file and was allegedly written by a previous adjuster who was not called to testify.
Plaintiff testified that defendant denied the claim in August, 1987 because it did not believe his version of the manner in which the damage occurred. Following this, there was a delay until plaintiff again spoke to Jackson and then made the decision to engage counsel. However, even after he complied with all of defendant's requests and supported his claim with the affidavit of Jackson, defendant failed to take any action. Counsel wrote several letters and telephoned defendant attempting to obtain some action on the case. The only action defendant took between November, 1987 and the date suit was filed in April, 1988 was to contact Bent, who inspected the engine (which was already repaired) three weeks after he was hired. When suit was filed in April, 1988, defendant had not yet informed defendant of its decision or when that decision would be forthcoming.
The trial judge determined that the facts of this case justified an award of penalties and attorney fees under La.R.S. 22:658. In order for an appellate court to modify the factual findings of the trial court, it must first find that the trial judge was clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
After our review of the facts in this case, we find that defendant failed to produce any evidence to show that the delays in resolving this claim were reasonably based on knowledge at its disposal at the time of either the original denial or after it received the information provided to it in November, 1987 by plaintiff or the report by Bent in February, 1988. Since it failed to show it had probable cause or was not arbitrary or capricious in failing to pay the claim timely, we find that the trial judge did not err in awarding penalties and attorney fees.
Defendant also asserts, in the alternative, that the amount of penalties should be $310.59, or 10% of the actual award of $3105.92. Plaintiff asserts that the award of $335.59 is proper.
At the time of this loss, La.R.S. 22:658 B(1) provided for a 10% penalty on the "total amount of the loss".[6] Thus, the trial judge did not err in awarding the penalties on the amount of $3355.92 since that is the total amount of the loss.
Defendant next contends that the attorney fees are excessive and that the trial judge erred in failing to allow defendant to crossexamine plaintiff and his counsel on this issue. Plaintiff argues that the award was reasonable based on the pleadings. He asserts that it is supported by an affidavit filed by counsel's office manager and the Final Statement attached to the affidavit. Plaintiff also points out that these documents were *1263 received into evidence at trial and that Mr. Kumpf was available at trial for questioning.
At the end of the trial, the trial judge stated that he intended to award attorneys fees. Rather than requesting a traversal by cross-examination of the witnesses at that time, defendant agreed to provide a written traversal post-trial. It was noted that defendant had seen a copy of the statement and affidavit of Mr. Kumpf.
In reviewing the issue of the alleged failure of the trial judge to allow cross-examination of plaintiff and his counsel, we find that defendant waived any objection by neither requesting the relief nor objecting at trial to the judge's decision to defer that issue pending written memoranda. Thus, we find that the trial judge did not err in this matter. However, the issue of the reasonableness of the attorney fee has merit.
The trial judge awarded the plaintiff $8500 out of the amount of $14,000 claimed by plaintiff's counsel. We realize that plaintiff's counsel was forced to expend an usually large amount of time on this case, in order to effectively represent plaintiff due to the prescription issue, which was raised several times by defendant. But, we find that the case itself was not so complex that, coupled with the time expended, it warrants attorney fees in the amount $8500. Consequently, we reduce the attorney fees to $4,500.
Plaintiff, in his answer to the appeal, requests that this court award post-trial attorney fees and costs. We agree he is entitled to an additional amount and award $1,500 in attorney fees. In addition, costs of the appeal are to be paid by defendant.
Accordingly, the judgment of the trial court is amended to reduce the attorney fees to $4,500 and plaintiff is awarded $1,500 for post-trial attorney fees. The judgment is hereby affirmed in all other respects, and affirmed as amended.
Costs of this appeal are to be paid by defendant.
AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] Grice involved a standard fire policy/homeowners/theft policy. In that case, the one year from date of loss was upheld because the theft policy was an extension of the homeowners/fire policy.
[2] R.S. 22:629 and 22:691 were the section numbers prior to the revision of the insurance code effective January 1, 1993. The revision renumbered many of the sections and is found in Louisiana Statutes Annotated Revised Statutes, Title 22, Insurance Code Revision, 1992 Special Pamphlet, West Publishing Co. These articles are now numbered 22:3019 and 22:3321 respectively.
[3] R.S. 22:629 A(3) was amended in 1987, effective July 2, 1987, after the date of the loss here and does not apply. However, even if it applied, the changes do not affect this case because the prescription period is the same.
[4] At trial Bent testified that the damage must have occurred from some other reason than the events described by plaintiff, because 1) the boat had a history of cavitation (he knew the first owner), which is when air becomes entrapped through water pressure on one side of the propeller blade; and 2) there was no ring deterioration, which should have occurred if the heat was sufficient to damage the heads. On cross-examination, he agreed that his opinion as to the cavitation propensity of the boat would be different after learning that the outdrive had been replaced after the original owner sold the boat.

Jackson testified that the events described by plaintiff would have caused the engine to overheat. He believed that only one intake was involved, otherwise the impeller would also have been damaged.
[5] This provision is now found in R.S. 22:3056 and has been amended to reduce the time from sixty to thirty days. See: Louisiana Statutes Annotated, Revised Statutes, Title 22, Insurance Code Revision, 1992 Special Pamphlet, West Publishing Co.
[6] See the 1986 amendment enacted in Act 1986, No. 132, effective June 26, 1986.